Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 98 C 7024 | DATE | 9/5/2001 |
| CASE TITLE | USA, ex rel. Ronnie Rodgers vs. Richard D. McVicar | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order. Rodgers' petition for writ of habeas corpus is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | 4 number of notices | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | | |
| ✓ | Notices mailed by judge's staff. | | | | 30 |
| | Notified counsel by telephone. | | | SEP 06 2001 date docketed | |
| | Docketing to mail notices. | | | | |
| ✓ | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | FILED FOR DOCKETING | 9/5/2001 date mailed notice | |
| ETV courtroom deputy's initials | | | 01 SEP -5 PM 5:04 | ETV | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ) | | |
| RONNIE RODGERS, ) | | |
| ) | | |
| Plaintiff, ) | | **DOCKETE** |
| ) | | |
| v. ) | No. 98 C 7024 | SEP 0 6 20( |
| ) | | |
| RICHARD D. McVICAR, ) | Judge Rebecca R. Pallmeyer | |
| ) | | |
| Defendant. ) | | |

## MEMORANDUM OPINION AND ORDER

On October 3, 1996, following a jury trial in the Circuit Court of Cook County, Petitioner Ronnie Rodgers ("Petitioner") was convicted of possession with intent to deliver more than 100 but less than 400 grams of a controlled substance, in violation of 720 ILCS 570/401, and sentenced to twelve years imprisonment. Petitioner has pursued his state court remedies without success. Now incarcerated in Vienna, Illinois at Vienna Correctional Center, he brings this petition for federal habeas corpus pursuant to 28 U.S.C. § 2254. In his petition, he argues that he was not found guilty beyond a reasonable doubt. Specifically he contends that: (1) the Illinois Appellate Court erred in upholding his conviction because the record contained no evidence of intent to distribute beyond the amount and packaging of the cocaine itself, both of which were not inconsistent with personal use; and (2) the Illinois Appellate Court erred when it excused the trial court for failing to give the jury necessary guidance on a dispositive legal issue after they explicitly requested such guidance. For the reasons set forth below, Rodgers' petition for writ of habeas corpus is denied.

## FACTUAL BACKGROUND[1]

The facts presented at trial established that on March 15, 1995, Chicago police officers found Petitioner in possession of a rock of cocaine weighing 25.73 grams and an additional 98.37 grams of powder cocaine in 20 smaller bags. (*People v. Rodgers*, No. 1-96-3901, Ill. App. Ct., 1st Dist., April 17, 1998 (hereinafter "*Rodgers*"), at 3.) Officer Armando Ramirez, a narcotics expert, testified for the prosecution that cocaine is usually purchased on the street in a 0.2 gram bag for $20 and that 0.2 or 0.4 grams is an amount consistent with personal use. (*Id.*) He further testified that as part of his own undercover work he had purchased one or two 0.2 gram bags on the street but admitted that he had also purchased as much as one ounce on the street. (Petition for Leave to Appeal to the Supreme Court of Illinois (hereinafter "P.L.A."), at 5-6, citing Report of Proceedings, Vol II. (hereinafter "R.P."), at J-11, J-19). He opined that the package recovered from Rodgers containing the rocks of cocaine would probably be broken down into smaller packets and sold on the street, and that the 20 bags of cocaine were likely to be broken down into approximately 400 packets of cocaine. (*Rodgers*, at 3.) According to Officer Ramirez, the street value of 126 grams of cocaine is $15,000. (*Id.*)

---

[1] In reviewing a petition for writ of habeas corpus under 28 U.S.C. § 2254, a federal court presumes that the facts found by state courts are correct. 28 U.S.C. § 2254 (e)(1); *See also Sumner v. Mata*, 449 U.S. 539, 547 (1981). A petitioner has the burden to establish by convincing evidence that a state court's factual determinations are erroneous. *See U.S. ex rel. Green v. Greer*, 667 F.2d 585, 589 n. 6 (7th Cir. 1981). Rodgers does not challenge the Illinois Appellate Court's factual findings in his petition. The court, therefore, adopts the facts set forth in *People v. Rodgers*, No. 1-96-3901, Ill. App. Ct., 1st Dist., April 17, 1998, at 3.

During deliberations, the jury sent the following note to the trial judge: "We need the definition (legal) of intent to deliver." (P.L.A. at 11, citing R.P. at K-6.) The court's written response was: "You have received all of the evidence in this case. Please continue to deliberate until you reach a verdict." (*Id.*) The jury instructions did not include a definition of intent, (R.P. at J-144-153), nor did defense counsel request such a definition. (R.P. at K-5; Supplemental Ex. 1, Common Law Record (hereinafter "C.R."), at 62.) In her closing argument, however, the prosecutor explained that intent to sell could be inferred from the amount of cocaine in the Petitioner's possession, the packaging of that amount, and the fact that he was carrying no drug paraphernalia that would suggest the cocaine was for his own personal consumption. (R.P. at J-111, J-112.) The jurors also received the following instruction on circumstantial evidence:

> Circumstantial evidence is the proof of facts or circumstances which give rise to a reasonable inference of other facts which tend to show the guilt or innocence of the defendant. Circumstantial evidence should be considered by you together with all the other evidence in the case in arriving at your verdict.

(C.R. at 33.) Finally, the jury was instructed that in order for Rodgers to be convicted, the state had to prove that "defendant knowingly possessed with intent to deliver a substance containing cocaine" and this proposition had to be proved "beyond a reasonable doubt." (*Id.* at 38.)

The jury returned a guilty verdict. (*Rodgers*, at 1; Ex. B, Respondent's Answer, Certified Disposition, *People v. Rodgers*, 95 CR 14140), and on October 29, 1996, the trial court sentenced Petitioner to 12 years imprisonment. (*Rodgers*, at 1.)

Petitioner appealed his conviction and sentence to the Appellate Court of Illinois, First Judicial District, arguing that (1) the State did not prove beyond a reasonable doubt that Petitioner had the intent to distribute; and (2) the court did not properly consider the factors presented in mitigation. (*Id.*) On April 17, 1998, the Appellate Court affirmed Petitioner's conviction and sentence. (*Id.*) On the issue of whether there were sufficient indicia of an intent to deliver, the court explained that intent to deliver is generally proven by circumstantial evidence. (*Id.* at 6.) When the amount of cocaine found in a defendant's possession is in excess of an amount reasonable for personal use, the amount alone can give rise to an inference of intent to deliver. (*Id.*) The court held that the amount found on defendant, 124.1 grams total, along with the packaging of some of the cocaine, and the testimony of Officer Ramirez that an amount consistent with personal consumption is .2 or .4 grams, were sufficient evidence for a juror to infer that the defendant intended to deliver the cocaine. (*Id.* at 6-7.)

With respect to the propriety of the trial court's instructions regarding the definition of "intent to deliver," the Appellate Court concluded that "the fact that the jury asked for the definition of 'intent to deliver' did not establish that the State failed to meet its evidentiary burden." (*Id.* at 8.) Because Petitioner did not argue that the jury was improperly instructed, and because the jury was able to render a verdict after being instructed that it had received all the evidence in the case, the court found that

there was "no indication that the jury was confused or that its subsequent verdict was unreliable." (*Id.*)

On May 18, 1998, Petitioner filed a petition for leave to appeal to the Supreme Court of Illinois, arguing both that the evidence was not sufficient to allow a rational jury to find him guilty beyond a reasonable doubt of intent to distribute and that it was error for the trial court not to instruct the jury of the meaning of intent after they showed confusion on the issue. (P.L.A., at 15-16.) After the Supreme Court denied the Petition for Leave to Appeal on October 6, 1998, *People v. Rodgers*, 179 Ill. 2d 609, 705 N.E.2d 446 (1998), Petitioner filed this Petition for Writ of Habeas Corpus on November 2, 1998.

## DISCUSSION

### A. Standard of Review

A petition for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court is governed by § 2254 of the Anti-Terrorism and Effective Death Penalty Act. 28 U.S.C. § 2254. Under § 2254, a prisoner is entitled to a writ of habeas corpus if he is being held under a state court judgment obtained in violation of the Constitution. *Id.* Because Petitioner has exhausted his state law claims and has not procedurally defaulted on either of the two claims he raises today, the court turns to the merits of Petitioner's arguments.

The federal court will not grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court proceedings unless that state decision (1) was contrary to, or involved an unreasonable application of, clearly established

- 5 -

federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. § 2254(d)(1) & (2). The "contrary to" provision refers to questions of law, and on such questions, a federal court will give the state court's opinion a "respectful reading," but will express its independent opinion on the legal issues. *See Lindh v. Murphy*, 96 F.3d 856, 869 (7th Cir. 1996) (en banc), *rev'd on other grounds*, 521 U.S. 320 (1997). The "unreasonable application" exception pertains to mixed questions of law and fact. *Id.* at 870. A state court's application of Supreme Court precedent is reasonable if it is "'least minimally consistent with the facts and circumstances of the case.'" *Spreitzer v. Peters*, 114 F.3d 1435, 1442 (7th Cir. 1997), quoting *Hall v. Washington*, 106 F.3d 742, 748 (7th Cir. 1997). A state court's decision must stand "if it is one of several equally plausible outcomes." *Ashford v. Gilmore*, 167 F.3d 1130, 1134 (7th Cir. 1999), quoting *Hall*, 106 F.3d at 749.

B.   **Sufficiency of the Evidence**

The standard for federal court review of sufficiency of the evidence is set out in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Under *Jackson*, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* In applying this standard, the court must give deference to the trier of fact and may not make its own credibility determinations, substitute judgments for the trier of fact, or reweigh the evidence. *Ford v. Ahitow*, 104 F.3d 926, 937-38 (7th

Cir. 1997); *United States v. Mejia*, 909 F.2d 242, 245 (7th Cir. 1990). Under 28 U.S.C. § 2254, the only question before this court is whether the state's application of the *Jackson* standard was reasonable. *Gomez v. Acevedo*, 106 F.3d 192, 199 (7th Cir.) (holding that federal review of this claim "now turns on whether the state court provided fair process and engaged in reasoned, good-faith decision making when applying *Jackson's* 'no rational trier of fact' test."), *vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1997). In this case, the Illinois Appellate Court relied on *People v. Clemons*, 277 Ill. App. 3d 911, 923, 661 N.E.2d 476, 484 (1st Dist. 1996), which, although it does not cite *Jackson*, articulates the same standard for review of the sufficiency of the evidence as set forth there.

Petitioner argues that the Appellate Court erred in finding that a reasonable juror could have found him guilty beyond a reasonable doubt of intent to distribute. Petitioner concedes that intent to distribute can be inferred from circumstantial evidence, *see, e.g., People v. Robinson*, 167 Ill. 2d 397, 408, 657 N.E.2d 1020, 1026 (1995), but he argues that none of the factors indicative of intent to deliver were present in this case. (Petitioner's Reply Memorandum at 2-3.) In Illinois, such factors include: (1) whether the quantity of controlled substance possessed is too large to be viewed as being for personal consumption; (2) the high purity of the drug confiscated; (3) possession of weapons; (4) possession of large amounts of cash; (5) possession of police scanners, beepers or cellular phones; (6) possession of drug paraphernalia; and (7) the manner in which the substance is packaged. *Id.*

The undisputed facts are that Petitioner was found with 124.1 grams of cocaine on him and that 98.37 grams of that cocaine were packaged in 20 small bags. The law is clear that possession of a small amount of a controlled substance, standing alone, is an insufficient basis from which to infer an intent to distribute. *See Turner v. United States*, 396 U.S. 398, 423 (1970) (possession of 14.68 grams of a mixture of cocaine hydrochloride and sugar, 5% of which was cocaine [approximately .734 grams] does not create an inference of intent to distribute). The law is equally clear, however, in both Illinois and federal courts, that possession of a large amount of cocaine on its own is enough to infer an intent to distribute. *See, e.g. United States v. Combs*, 222 F.3d 353, 652-3 (7th Cir. 2000) (616 grams of methamphetamines creates inference of intent to distribute); *United States v. Hunter*, 95 F.3d 14, 16 (8th Cir. 1996) (14.76 grams of cocaine, "an amount that would definitely be involved in distribution versus personal use," creates inference of intent to distribute); *People v. Radcliff*, 305 Ill. App. 3d 493, 498-99, 712 N.E.2d 424, 428 (5th Dist. 1999) (defendant in possession of 26.8 grams of cocaine convicted of intent to distribute after expert testified that amount was too large for personal use); *United States v. Mather*, 465 F.2d 1035, 1038 (5th Cir. 1972) (possession of 197.75 grams of cocaine was sufficient to make out a prima facie case of intent to distribute the cocaine); *United States v. Gooding*, 695 F.2d 78, 84 (4th Cir. 1982) (approximately 25 grams of cocaine packaged in a way typical of packaging used by narcotics distributers supported inference of intent to distribute).

Petitioner argues that 124.1 grams on its own was not enough to create the inference of intent to distribute. To support this argument, he points out that Illinois courts have found that "cocaine consumption varies markedly from individual to individual, at least according to various police and expert witnesses that testify about average user consumption in these cases." *People v. Rivera*, 293 Ill. App. 3d 574, 581, 688 N.E.2d 752, 757 (1st Dist. 1997). For example, experts have testified that a normal amount of cocaine for personal use was 1.7 to 2.4 grams, *see People v. Nixon*, 278 Ill. App. 3d 453, 455, 663 N.E.2d 66, 68 (3d Dist. 1996), while others have testified that a heavy cocaine user could go through an ounce of cocaine (28.35 grams) in one and a half to two days, *see Rivera*, 293 Ill. App. 3d at 581, 688 N.E.2d at 757. Still others have said that as much as 30 grams of cocaine can be "for personal use, depending on the individual." *See United States v. Kimmons*, 917 F.2d 1011, 1016 (7th Cir. 1990). Notably, Petitioner here was found in possession of more than four times this most generous estimate (30 grams) of an amount consistent with personal use.

Putting aside the volume of cocaine in his possession, however, Petitioner's argument appears to misconstrue the question before this court. The inquiry at hand is simply whether the Appellate Court's decision that a reasonable juror could have found the requisite intent beyond a reasonable doubt was contrary to or involved an unreasonable application of clearly established law. 28 U.S.C. § 2254(d)(1). For that analysis, the court must look at the evidence presented to this particular jury: Officer Ramirez testified that .2 or .4 grams was consistent with personal use and could be bought at one time on the street, though he admitted that he had purchased as much

as 28 grams at one time on the street. If the jurors chose to believe Officer Ramirez, they could easily have concluded that 124.1 grams of cocaine was not consistent with personal use and, therefore, that Petitioner had the requisite intent to distribute. In addition, the jury was presented with evidence that some of the cocaine was packaged into 20 smaller bags, creating another inference that the cocaine was not for personal use. Because the Appellate Court reviewed the evidence that was before the jury and, therefore, "engaged in reasoned, good-faith decision making" in determining that there was sufficient evidence with which a reasonable juror could have found Petitioner guilty, the Appellate Court's decision was based on a reasonable determination of facts in light of the evidence and will not be disturbed by this court on habeas review.[2] *Gomez*, 106 F.3d at 199.

---

[2] For this same reason the court rejects Petitioner's argument that the *Clemons* case cited by the Appellate Court does not support his conviction. *See People v. Clemons*, 277 Ill. App. 3d 911, 924-25, 661 N.E.2d 476, 487 (1st Dist. 1996). The Appellate Court relied on *Clemons* for the proposition that possession of a large quantity of cocaine in an amount in excess of what was reasonable for personal use can give rise to an inference of intent to deliver. Petitioner argues that because the amount at issue in *Clemons*, over 500 grams of cocaine, was much larger than the amount in this case, any reliance on *Clemons* is misplaced.

The court disagrees. Petitioner was in possession of an amount of cocaine that an expert testified was inconsistent with personal use, just as the defendant in *Clemons* was in possession of an amount inconsistent with personal use. Significantly, more recent decisions have held that as little as 26.8 grams can be enough for an inference of intent where the jury heard expert testimony that 26.8 grams was an amount inconsistent with personal use. *See People v. Radcliff*, 305 Ill. App. 3d 493, 498-99, 712 N.E.2d 424, 428 (5th Dist. 1999).

C.  Jury Confusion

Petitioner next argues that the Appellate Court erred in excusing the trial court's failure to respond to a question posed by the jury. Specifically, Petitioner contends that when the jury sent the trial judge a request for the "definition (legal) of intent to deliver," the court erred by not providing such a definition, responding instead, "You have received all of the evidence in this case. Please continue to deliberate until you reach a verdict." (P.L.A. at 11, citing R.P. at K-6.) According to Petitioner, the absence of guidance forced the jury to speculate as to the legal definition of intent and resulted in a decision contrary to the evidence.

Significantly, Petitioner does not argue that the jury instructions themselves were confusing or erroneous. Instead, he argues that the judge erred by failing to provide a legal definition of intent when the jury requested such a definition during the course of their deliberations, and that this failure led the jury to reach a guilty verdict finding the element of intent beyond a reasonable doubt. In support of this argument, Petitioner cites the Supreme Court's decision in *Bollenbach v. United States*, 326 U.S. 607 (1946).[3] In *Bollenbach*, the Supreme Court overturned the defendant's conviction for conspiring to transport stolen securities in interstate commerce after finding that

---

[3] Petitioner also cites *United States v. Romero*, 57 F.3d 565, 573 (7th Cir. 1995) where the Seventh Circuit concluded that a trial judge was "without question" acting within its discretion when he provided a supplemental instruction which properly stated the law and correctly responded to the jury's request for a definition. This case is not controlling here. The fact that a trial court *may* give a correct supplemental instruction does not support the proposition that a trial court *must* give such instruction or risk violating clearly established Supreme Court law.

the judge responded incorrectly to a question posed by the jury. *Id.* at 608-9. Specifically, after the jury reported that they were "hopelessly deadlocked," they asked the judge whether the defendant's knowledge that bonds he had helped to dispose of had been stolen was sufficient to support a conviction of conspiracy to transport stolen securities in interstate commerce. *Id.* at 609. The judge answered by telling the jury that the defendant's possession of stolen property in a state other than the one in which it was stolen "raises a presumption that the possessor was the thief and transported stolen property in interstate commerce." *Id.* The court explained, further, that if the jury found that defendant had possession of the bonds shortly after the theft, that finding would be sufficient to justify the conclusion that defendant had knowledge that the property was stolen. *Id.*

Reversing defendant's conviction, the Supreme Court, explained that the trial judge's response to the jury was not correct: the receipt of stolen securities after their transportation across state lines was not a federal crime at the time of the transaction in question. Thus, defendant could not properly be convicted of having conspired to transport securities across state lines merely on proof that he helped dispose of the stolen securities after the interstate transportation was concluded. *Id.* at 610-611. The *Bollenbach* court observed that "[w]hen a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy." Notably, however, the court's concern was not that the judge had failed to provide information to the jury, but

instead, that the judge gave the jury an answer that "was simply wrong." *Id.* at 612-13.

Where the jury's instruction are adequate and accurate, the trial court's failure to respond to a jury question does not raise a constitutional issue. In the more recent case of *Weeks v. Angelone*, 528 U.S. 225 (2000), the jury had asked the trial court whether they were required to impose the death penalty if they found an aggravating factor proved beyond a reasonable doubt. The trial court responded merely by directing the jury's attention to a relevant paragraph in the jury instructions. *Id.* at 730. Affirming the denial of a habeas petition, the Court distinguished *Bollenbach* as dealing with an instruction that was "palpably erroneous." *Id.* at 731. Given the fact that the *Weeks* jury instructions were "constitutionally adequate," the court held that the Constitution required no more than the trial judge directing the jury to this section because "a jury is presumed to follow its instructions [and] . . . is presumed to understand a judge's answer to its question." *Id.* at 733. The Court further explained that if the jury had desired more information they would have alerted the court by asking another question and that "[t]o presume otherwise would require reversal every time a jury inquires about a matter of constitutional significance, regardless of the judge's answer." *Id. See also United States v. Span*, 170 F.3d 798, 802 (7th Cir.) (if the original jury charge clearly and correctly states the applicable law, the judge may properly answer the jury's question by instructing the jury to reread the instructions and need not direct the jury to specific sections of the instructions), *cert. denied*, 528

U.S. 862 (1999); *United States v. Martel*, 792 F.2d 630, 637 (7th Cir. 1986) (trial court did not abuse its discretion by referring to the instructions on conspiracy rather than attempting to answer a question not susceptible of an unqualified answer).

In Petitioner's case, the judge did not answer the jury's inquiry directly, but, instead, explained to the jurors that they had received all the evidence in this case and that they should continue to deliberate. Arguably a better approach would have been for the trial judge to refer the jury back to the instructions. *Compare United States v. Hamann*, 688 F.2d 507, 509-10 (7th Cir. 1982) (in response to a jury note telling him "What the term 'intent' means seems to be the problem," trial court properly re-read definition of "intent to defraud"). Nevertheless, his actions are clearly distinguishable from those of the *Bollenbach* trial judge, who actually gave incorrect information to the jury. Instead, the trial court's instructions in Petitioner's case, like the trial court's instructions in *Weeks*, had the effect of directing the jury to the evidence at hand and the instructions they had already been given.

Had the jury in this case been provided with a definition of intent in their original instructions, the inquiry could simply end here. This case arguably differs from those in which the jury had already been provided with the necessary guidance because the original jury instructions contain no definition of intent. In these circumstances, the court must consider the evidence and instructions as a whole to determine whether a reasonable juror would have been so confused as to the issue of intent that she would have been unable to find that Petitioner had the requisite intent beyond a reasonable doubt.

In considering this issue, the court notes, first, that the prosecutor unquestionably understood that she was required to prove intent. To do so, she called an expert in the area of cocaine trafficking. In her closing argument, the prosecutor referred directly to the issue of intent: She explained to the jury that intent could be found by circumstantial evidence, including the amount of cocaine Petitioner had in his possession and the fact that "Officer [sic] Ramirez told us that no one carries this much cocaine around on them for personal consumption." (R.P. at J-111.) She explained, further, that intent could be found from the packaging of the cocaine and the facts that Petitioner was not carrying a pipe or other drug paraphernalia that would suggest he was going to use the cocaine for himself. (*Id.* at J-111-12.) The jurors were directed to consider circumstantial evidence, defined in the instructions as "the proof of facts or circumstances which give rise to a reasonable inference of other facts which tend to show the guilt or innocence of the defendant." (C.R. at 33.) Most importantly, the jurors received an instruction that in order to find Rodgers guilty of possession with intent to deliver a controlled substance the state had to prove that "the defendant knowingly possessed with intent to deliver a substance containing cocaine" and that this proposition had to be proved "beyond a reasonable doubt." (*Id.* at 38.)

The jurors in this case heard circumstantial evidence of intent, were instructed that they could draw reasonable inferences from such evidence, and were further instructed that the state had to prove possession with intent to deliver beyond a reasonable doubt. In these circumstances, the Illinois courts reasonably concluded that there was "no indication that the jury was confused or that its subsequent verdict was

- 15 -

unreliable." *Rodgers*, at 8. *Cf. United States v. Fields*, 689 F.2d 122, 127 (7th Cir. 1982) (where jury asked for a legal dictionary and asked for a clarifying instruction about prior intent or predisposition, trial court did not err by telling jury to rely on their own observations and experiences in making a judgment and by referring them back to a portion of the jury instructions because "at best, the questions indicated a desire for a clarifying instruction, and not juror confusion.").

D.  **Harmless Error Analysis**

This court's role in a habeas proceeding is circumscribed. In *California v. Roy*, 519 U.S. 2 (1996), the Court considered circumstances in which the trial judge instructed the jury on the offense of aiding and abetting murder without explaining that the jury was required to find that defendant intended to commit or facilitate the crime. Reversing the grant of a habeas petition, the Supreme Court characterized the incomplete instruction as a "trial error," subject to the harmless error standard of review set forth in *Kotteakos v. United States*, 328 U.S. 750, 776 (1946). *See also Neder v. United States*, 527 U.S. 1 (1999) (materiality of defendant's false statement is an element of the offense of tax fraud, but trial court's error in failing to charge the jury on the element of materiality is subject to harmless error review).

Under the *Kotteakos* standard, assuming that the trial court in this case erred by failing to provide the jury with a definition of intent, such an error would be grounds for habeas relief only if it had substantial and injurious effect or influence in determining the jury's verdict. That test is not met here. The instructions themselves were clear; the court defined circumstantial evidence to the jury; evidence of intent was

- 16 -

presented to the jury; and the prosecutor explained how intent could be found from circumstantial evidence, including the amount of cocaine found in Petitioner's possession and the manner in which it was packaged. Most importantly, as noted, the jury was told that they must find intent beyond a reasonable doubt. Under these circumstances, the court cannot conclude that the trial judge's failure to provide a legal definition of a commonly understood word had a "substantial and injurious effect or influence in determining the jury's verdict."

## CONCLUSION

For the foregoing reasons, Rodgers' petition for writ of habeas corpus is denied.

ENTER:

Dated: September 5, 2001

REBECCA R. PALLMEYER
United States District Judge